**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| IN RE ) | |
| ) | **Case No. 10-20466-TLM** |
| **JEREMY M. CLARK,** ) | |
| **AMBER M. CLARK,** ) | |
| ) | **Chapter 7** |
| Debtors. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

**BACKGROUND AND FACTS**

Debtors Jeremy and Amber Clark filed a voluntary chapter 7[1] petition on April 19, 2010, commencing this bankruptcy case. Doc. No. 1.[2] The case was noticed to creditors as a "no asset" chapter 7 case, and creditors were instructed not to file proofs of claim. Doc. No. 13. An August 3, 2010, bar date for objecting to discharge under § 727(a) and Rule 4004(a), or to the dischargeability of specific debts under § 523(c)(1) and Rule 4007(c), was set. *Id.*[3]

The chapter 7 trustee filed a "report of no distribution" on August 5, 2010.

---

[1] Unless otherwise indicated, all statutory references and citations are to the Bankruptcy Code, Title 11, U.S. Code §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure 1001-9037.

[2] The Court takes judicial notice of its files and records. Fed. R. Evid. 201.

[3] The bar date under both Rules is sixty (60) days after the first date set for the § 341(a) meeting of creditors in the bankruptcy case.

MEMORANDUM OF DECISION - 1

Debtors were granted a discharge on August 12, 2010, and the case was closed that same day. Doc. Nos. 17, 18.

On June 7, 2011, Samantha Richardson and others, appearing through attorney R. D. Watson ("Movants") filed a "Motion to Reopen; for Declaratory Relief for Relief from Stay or in the Alternative for Opportunity to Amend," Doc. No. 21 ("Motion"). The Motion was supported by an affidavit and brief, further explaining the request(s) of Movants. Doc. Nos. 22, 23.

The Court caused the Motion to be set for hearing, and that hearing was held on July 6, 2011. The Motion was then taken under advisement. This Decision addresses the Motion, and related matters.[4]

### A. Movants' claims

Movants contend that they have claims against Debtors, reflected by a lawsuit they commenced against Debtors and others which is presently pending before the United States District Court for the District of Idaho. *See Richardson, et al, v. Idaho Dept. of Health & Welfare, et al*, Case No. 2:10-cv-00648-BLW (the "Civil Action").[5] The Civil Action was commenced on December 30, 2010. Debtors, appearing *pro se*, filed an answer to the complaint in the Civil Action on

---

[4] To the extent required by Rules 7052 and 9014(c), this Decision constitutes the Court's factual findings and legal conclusions.

[5] The Court has taken notice of the docket and pleadings in the Civil Action, *see* Fed. R. Evid. 201, and has reviewed the same in order to address the issues presented by this Motion.

MEMORANDUM OF DECISION - 2

January 28, 2011. Attorney Mark A. Jackson later appeared for Debtors in the Civil Action on March 2, 2011. In the Civil Action, Movants assert that Debtors are liable for the wrongful death of a foster child entrusted to their care.

While the pleadings in the Civil Action were all filed well after entry of Debtors' discharge and closure of the bankruptcy case in August 2010, the Movants' claims, according to the factual allegations in the complaint, arose before the April 2010 commencement of Debtors' chapter 7 case.

In April 2011, Debtors asserted in the Civil Action that the Movants' claims were barred by Debtors' bankruptcy discharge, and requested dismissal of the Civil Action on that basis. Briefing on such issues occurred. On May 27, 2011, the District Court entered an order staying the Civil Action due to the bankruptcy issues. On June 7, the instant Motion and related pleadings were filed with this Court.

## DISCUSSION AND DISPOSITION

### A. Motions to reopen generally

A motion to reopen a closed bankruptcy case is necessarily brought under § 350(b), which provides:

> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

As this Court noted in *In re Ransom*, 00.1 I.B.C.R. 50, 2000 WL 33712560

MEMORANDUM OF DECISION - 3

(Bankr. D. Idaho 2000), a motion to reopen is committed to the discretion of the bankruptcy court, and it "legitimately presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee. Extraneous issues should be excluded." *Id.* at 51 (quoting *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 916-17 (9th Cir. BAP 1999)). The burden of establishing sufficient or adequate "cause" to reopen lies with the moving party. *Id.*

Further, reopening is simply a ministerial act, which "lacks independent legal significance and determines nothing with respect to the merits of the case." *Cusano v. Klein*, 264 F.3d 936, 948 (9th Cir. 2001) (citing *Menk*, 241 B.R. at 913-17 ); *see also In re Staffer*, 262 B.R. 80 (9th Cir. BAP 2001); *Paine v. Dickey (In re Paine)*, 250 B.R. 99, 107 (9th Cir. BAP 2000) (reopening is a mere "mechanical device" that does not afford or deny any affirmative relief).

However, there must be some potential relief that is available to a movant in a reopened case; otherwise reopening is pointless, and the § 350(b) motion will be denied. *In re Frederick*, 99.4 I.B.C.R. 178, 179, 1999 WL 33490226, at *1-2 (Bankr. D. Idaho 1999) (citing *In re Beezley*, 994 F.2d 1433, 1437 (9th Cir. 1993) (O'Scannlain, J., concurring)); *see also In re Mendiola*, 97.3 I.B.C.R. 77 (Bankr.

MEMORANDUM OF DECISION - 4

D. Idaho 1997).[6]

### B. Relief sought other than or in addition to reopening

Movants request that the bankruptcy case be reopened. However, in doing so, they also request by their Motion entry of a "declaratory judgment" apparently to the effect that their claims are not barred by Debtors' discharge. Movants also ask for relief from the § 362(a) automatic stay and/or a declaration that they are not subject to the stay. Movants ask this Court "for an order allowing them to amend their Complaint in District Court to omit any negligence claims that may be barred by a discharge and to allow Plaintiffs to pursue their claims involving intentional behavior [of Debtors]." Motion at 2-3.

At the outset, it is clear that this Court cannot grant several of the requests for relief sought by the Motion. To obtain a judgment determining the dischargeability of a debt generally requires an adversary proceeding. Rule 7001(6). A request for declaratory relief from this Court must also be sought by an adversary proceeding. Rule 7001(9). And while a request for relief from stay is properly sought by a motion, that motion must comply with Rule 4001 and LBR

---

[6] *Frederick*, like *Beezley*, concerned attempts by a debtor to reopen a no asset/no claim bar chapter 7 case to add creditors not scheduled or listed previously in the case, believing that such a course would allow the debtor to discharge the claims of those omitted creditors. Since the issue is controlled by the provisions of § 523(a)(3), discussed further *infra*, the "reopening [of] the case merely to schedule the debt is for all practical purposes a useless gesture." *Mendiola*, 97.3 I.B.C.R. at 78 (citation omitted).

MEMORANDUM OF DECISION - 5

4001.2.[7] Thus, none of these requests may be considered or granted under the guise of ruling on the instant Motion.[8] These procedural and substantive defects are in addition to the above-noted prudential limitations on what the Court should address when considering a motion to reopen a bankruptcy case and the instruction that such a motion presents only narrow issues for resolution.

The Court will, therefore, deny the Motion, without prejudice, as to the various "alternative" forms of relief set out therein.

### C. Reopening the bankruptcy case

That leaves the Court with the question of whether to grant the request under § 350(b) to reopen the case. As noted, there must be a purpose to such an act. Reopening should not be granted if that relief is meaningless.

The gist of the issue here is the effect of the discharge and closing of Debtors' no asset/no claim bar case on Movants' claims. Those claims arose prior to the filing of the petition for relief, according to the allegations of the complaint in the Civil Action. Thus, they would be creditor claims properly assertable in the bankruptcy case. *See* § 101(5) (defining "claim"); § 101(10) (defining "creditor").

---

[7] When Debtors were discharged and the bankruptcy case was closed on August 12, 2010, the automatic stay of § 362(a) was terminated. *See* § 362(c)(2). However, while the stay as to Debtors terminated with their discharge under § 362(c)(2)(C), it was replaced with a discharge injunction as to any discharged debts. *See* § 524(a).

[8] Further, the request that this Court enter an order that would "allow" Movants to amend their complaint in the Civil Action before the United States District Court is misguided. Even if this Court had the ability to interfere with the District Court's authority over the Civil Action and the parties' pleadings or conduct therein, it would decline to do so.

MEMORANDUM OF DECISION - 6

However, the notice of commencement of the bankruptcy case – served by mail on all Debtors' scheduled and listed creditors – did not go to Movants. *See* Doc. No. 13 at 3 (BNC certificate of service by mailing).[9]  Movants have expressly asserted that they were not notified of the bankruptcy. *See* Case No. 2:10-cv-00648-BLW at Doc. No. 42.  Debtors' filings in the Civil Action concede lack of notification. *Id.* at Doc. No. 35-1 (Rupp Affidavit at 2, ¶ 6).

The question is, given this state of affairs, whether the claims of Movants are subject to Debtors' discharge.  That is a legal question, controlled by statute. The Bankruptcy Code provides in pertinent part:

> (a)  A discharge under § 727 . . . of this title does not discharge an individual debtor from any debt –
> . . .
> (3)  neither listed nor scheduled . . . in time to permit –
>   (A)  if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>   (B)  if such debt is of a kind specified in paragraphs (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

Section 523(a)(3)(A) & (B).  This Court has previously explained the operation of this provision:

---

[9] That certificate does not disclose any service on Samantha Richardson, Karin Rogers or any other party identified as a plaintiff in the Civil Action.  Nor does it disclose service on the Movants' attorney, Mr. Watson, or on any other attorney for Movants.

MEMORANDUM OF DECISION - 7

> Thus, in a no asset, no [claim] bar date case, if the omitted [creditor's] debt falls within the ambit of 11 U.S.C. § 523(a)(3)(A), it has already been discharged under 11 U.S.C. § 727(b). If the omitted debt is of a type specified by 11 U.S.C. § 523(a)(3)(B), it has not been discharged, and is non-dischargeable.

*Mendiola*, 97.3 I.B.C.R. at 78 (citing *Beezley*, 994 F.2d at 1434). Two years after the Hon. Alfred C. Hagan's decision in *Mendiola*, this Court reached the same conclusions in *Frederick*. There, the Court also observed:

> [T]he convoluted language of section 523(a)(3) can be paraphrased as follows:
>     (a) A discharge does not cover –
>     (3) an unscheduled debt if –
>     (A) with respect to a debt not covered by § 523(c), the failure to schedule deprives the creditor of the opportunity to file a timely claim, or
>     (B) with respect to an intentional tort debt covered by § 523(c), the failure to schedule deprives the creditor of the opportunity to file a timely claim or a nondischargeability complaint.

1999 WL 33490226 at *1 (quoting *Beezley*, 994 F.2d at 1436 (O'Scannlain, J. concurring)).[10] *Frederick* continued:

> The "several creditors" omitted during the Debtor's case either have discharged debts under § 523(a)(3)(A), or they have nondischarged debts under § 523(a)(3)(B). Scheduling those creditors now will have no effect, regardless of the category into which they fall. Reopening the case can accord no relief to Debtor on this score, and no other cause has been alleged or shown.

---

[10] A § 523(c) debt is one asserted to be nondischargeable under § 523(a)(2), (a)(4) or (a)(6). *See* § 523(c)(1). Under Rule 4007(b), a complaint objecting to discharge of a debt other than under § 523(c) may be brought at any time. Under Rule 4007(c), a complaint to determine dischargeability of a debt falling under § 523(c) must be brought within 60 days of the first date set for the § 341(a) meeting of creditors.

MEMORANDUM OF DECISION - 8

*Id.* at *2.

However, the reopening of the case is not here sought by Debtors to undertake the meaningless task of amending their schedules to now list the Movants as omitted creditors. Is there some other reason to reopen the bankruptcy case?

Movants assert a claim that, they now contend, qualifies under § 523(a)(6) as a "willful and malicious" injury.[11] Claims under § 523(a)(6) are, as noted, ones that fall under § 523(c) and are therefore subject to § 523(a)(3)(B). A respected treatise explains the interplay of the Code sections in circumstances such as this:

> If a debt falls within subsection 523(a)(2), (a)(4) or (a)(6), it will not be discharged unless listed or scheduled in time to permit the creditor to receive notice of the deadline under Rule 4007(c) for the filing of a complaint to determine the dischargeability of the debt. However, neither the Code nor the Rules explicitly set forth how to make the determination as to whether a debt is of the kind specified in subsection 523(a)(2), (a)(4) or (a)(6).
>
> Some courts have reasoned that subsection 523(a)(3)(B) allows an unscheduled creditor whose time to file a dischargeability action has expired under Rule 4007(c) to bring such an action nonetheless, but that the action must be brought in the bankruptcy court due to the bankruptcy court's exclusive jurisdiction of dischargeability determinations under subsection (a)(2), (a)(4) or (a)(6). Other courts have concluded that the bankruptcy court does not have exclusive jurisdiction of the determination of nondischargeability under subsection 523(a)(3)(B) even though determinations must be made under subsection 523(a)(2), (a)(4) or (a)(6), which ordinarily involve

---

[11] Movants appear to concede that, to the extent their claims are for "negligence" or otherwise do not rise to the level required under § 523(a)(6), they are discharged under and by virtue of § 523(a)(3)(A).

MEMORANDUM OF DECISION - 9

>exclusive bankruptcy court jurisdiction; the penalty to the debtor for failing to schedule a debt which may be subject to subsection 523(a)(2), (a)(4) or (a)(6) is the loss of exclusive federal jurisdiction and the 60-day limitations period under Rule 4007(c).

Collier on Bankruptcy ¶ 523.09[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011); *see also id.* ¶ 523.09[1] (noting that § 523(a)(3)(B) does not provide an independent basis for a nondischargeability determination, but that the penalty for failing to schedule such a creditor is the debtors' loss of the 60-day limitations period of Rule 4007(c) and the possible loss of exclusive federal jurisdiction over § 523(c) determinations). The Court has been unable to locate direct precedent in this Circuit on the subject, but agrees with the treatise analysis. In this case, therefore, Debtors are not protected by the Rule 4007(c) 60-day limitation period.

It remains to be determined whether Movants have a claim that meets the requirements for nondischargeability under § 523(a)(6).[12] In the Ninth Circuit, the bankruptcy court has exclusive jurisdiction to make that determination. *See*, *e.g.*, *McGhan v. Rutz (In re McGhan)*, 288 F.3d 1172, 1179 n. 9 (dischargeability of debt under § 523(a)(6) is a core bankruptcy proceeding over which federal courts possess exclusive jurisdiction) (citing *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 904 (9th Cir. 2001)).

---

[12] *See generally Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702 (9th Cir. 2008); *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101 (9th Cir. 2005); *Carillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002).

Thus, reopening arguably has a function, as it would provide a context for the adversary proceeding that is required[13] to establish a nondischargeable debt under § 523(a)(3)(B) and § 523(a)(6).[14]  However, one final wrinkle must be considered before taking the step of reopening the bankruptcy case and allowing the subsequent commencement of a non-time-barred adversary proceeding to determine dischargeability of debt under § 523(a)(6).  That wrinkle is created by 28 U.S.C. § 157(b)(5).[15]  That section, in addressing the referral of matters from the District Court to the Bankruptcy Court and the powers of the Bankruptcy Court, provides:

> (5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5).[16]  Since Movants' claims against Debtors are as yet unadjudicated, the issue to be presented is not solely one of dischargeability under

---

[13]  *See* Fed. R. Bankr. P. 7001(6).

[14]  It might well be argued that a reopened chapter 7 case is not required for this Court to entertain and adjudicate an adversary proceeding to determine dischargeability of debt.  However, it also would do no harm, and it provides a clear connection between the adversary litigation and the underlying bankruptcy case, and an open case in which this Decision can be filed.

[15]  Other statutory provisions address other aspects of the personal injury tort/wrongful death claims subject.  *See* 28 U.S.C. § 157(b)(2)(B), (b)(2)(O) & (b)(4); 28 U.S.C. § 1411(a).

[16]  As the Supreme Court recently clarified, this provision is not "jurisdictional" but instead addresses *where* such claims shall be tried.  *Stern v. Marshall*, ___ U.S. ___, 2011 WL 2472792 at *11-12 (June 23, 2011).

MEMORANDUM OF DECISION - 11

§ 523(a)(6) of a prior liability represented by a judgment. In an adversary proceeding under § 523(a)(6), this Court would necessarily have to hear evidence on and consider the wrongful death allegations in the process of evaluating and deciding the § 523(a)(6) cause.[17]

The solution here flows from the fact that the pending litigation is not before the Idaho state courts – where the Ninth Circuit's precedent regarding exclusive federal court jurisdiction would prohibit consideration of the § 523(a)(6) issue – but is instead before the United States District Court for the District of Idaho. As *McGhan* notes, the "federal courts" have exclusive jurisdiction over § 523(a)(2), (4) and (6) actions. And the Bankruptcy Court's jurisdiction is derived from and through that of the District Court. *See* 28 U.S.C. § 1334; 28 U.S.C. § 151. The District Court refers matters to the Bankruptcy Court. *See* 28 U.S.C. § 157(a). But the District Court may also withdraw that reference, either on its own motion or the timely motion of a party. 28 U.S.C. § 157(d).[18]

---

[17] This Court reaches no conclusion on whether 28 U.S.C. § 157(b)(5) presents an insuperable bar to its adjudication of liability in conjunction with determining nondischargeability. *See*, *e.g.*, *Berman, Berman & Berman v. Jordan (In re Jordan)*, 2010 WL 6259987, at *3 (9th Cir. BAP June 29, 2010) ("[I]t is not established that the personal injury exception to those matters which may be heard in the bankruptcy court contained in 28 U.S.C. § 157(b)(2)(B) and 157(b)(5) apply to dischargeability determinations.") The Court merely identifies it as a potential issue. The Court discusses, *infra*, a suggested process under which that issue would be avoided and not need to be addressed further.

[18] In pertinent part, 28 U.S.C. § 157(d) provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Pursuant to Fed. R. Bankr. P. 5011(a), any motion for withdrawal of a case or proceeding shall be heard by a district judge.

MEMORANDUM OF DECISION - 12

The Civil Action has already been commenced and is pending.[19] Judicial economy, if nothing else, suggests that the Civil Action would be the most convenient and logical place for Movants to attempt to establish, in addition to the threshold matter of Debtors' liability, the basis for a judgment that such liability also falls within the parameters of § 523(a)(6). As the legal standards for a § 523(a)(6) determination are well-established, *see* cases at note 12 *supra*, the District Court can readily apply them to the evidence. Furthermore, adjudication of the § 523(a)(6) claim by the District Court would avoid any arguable issues under 28 U.S.C. § 157(b)(5).

**CONCLUSION**

This Court will therefore enter an order granting the Motion to the extent of reopening the chapter 7 case under § 350(b). No other relief on the Motion will be ordered.

Whether or not this reopening of Debtors' chapter 7 case is followed by the commencement of an adversary proceeding in this Court, or whether such an adversary proceeding, if commenced, remains before this Court, depends in large part on the considerations of the District Court as to whether to withdraw the reference. As noted above, the District Court may withdraw "in whole or part any case or proceeding" and may do so *sua sponte*. Because no adversary proceeding

---

[19] There are also defendants in the Civil Action in addition to Debtors, which adds a complicating factor.

MEMORANDUM OF DECISION - 13

is yet pending, and because the Civil Action is, this Court would respectfully suggest to the District Court that it consider withdrawing the reopened chapter 7 case.[20] It could then subsequently determine whether a separate adversary proceeding before it is required, or whether amendment of the pleadings in the Civil Action would suffice.[21]

An appropriate Order will be entered.

DATED: July 29, 2011

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[20] There is no suggestion that a trustee needs to be appointed, or that there is any administration of the chapter 7 case that is required. The sole issue implicated is nondischargeability of this one alleged debt.

[21] In order that the District Court is apprised of this Court's thoughts and conclusions on the Motion and related matters, the Court will instruct its Clerk to deliver a copy of this Decision to the District Judge presiding in the Civil Action.

MEMORANDUM OF DECISION - 14